In the Matter of the Application of the County Collector for Judgment of Sale Against Lands and Lots Returned Delinquent for Non-Payment of General Taxes for the Year 1959 and Prior Taxes. Petition of R. Gabel for Tax Deed.

R. Gabel, Petitioner-Appellee, v. City of Chicago, a Municipal Corporation, Respondent-Appellant.

Gen. No. 49,582.

First District, First Division.

April 7, 1965.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Marvin E. Aspen, Assistant Corporation Counsel, of counsel), for appellant.

Shaffer, Seelig, Mandel and Shapiro, of Chicago (Kalman S. Lieberman and Owen N. Price, of counsel), for appellee.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, and Theodore M. Swain, Assistant State's Attorney, of counsel), for County Collector of Cook County.

Robert S. Cushman and Maurice W. Scott, of Chicago, Amici Curiae.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Petitioner, as the assignee of tax sale certificates covering real estate in the City of Chicago, applied to the County Court for the issuance of a tax deed conveying merchantable title to her under the authority of Section 266 of the Revenue Act of 1939. (Ill Rev Stats 1963, c 120, § 747.) Respondent, City of Chicago, objected to the granting of the relief sought unless reimbursement was first made to it as the owner of certain prior tax deeds to the premises. The City's

position was based on Section 270 of the same act. (Ill Rev Stats 1963, c 120, § 751.) After full hearing, the trial court ordered the County Clerk to issue a tax deed in accordance with the petition, and the City has filed this appeal.[1]

There is no issue of fact. Petitioner purchased a tax sale certificate from one J. Rogers who had bought the premises in question at a sale for nonpayment of the 1959 general taxes. Rogers had also paid the general taxes for the years 1947 through 1958, which amounts were included in his certificate of sale. All taxes subsequent to the sale were also paid. The period of redemption had expired and due notices had been given when petitioner applied for the issuance of a merchantable tax deed.

The City of Chicago was listed in the petition among those persons alleged to have an interest in the premises. That interest, which petitioner, in effect, sought to foreclose, stemmed from the City's ownership of tax deeds which, in turn, were based on its purchase of the premises for the nonpayment of special assessments for the years 1907 through 1912.[2]

Pertinent parts of the two sections of the statute here involved read as follows:

§ 747 (Section 266):

At any time within 5 months prior to the expiration of the time of redemption from the sale of any real estate for nonpayment of taxes or special assessments, pursuant to judgment and order of sale on the County Collector's application

---

[1] Appeal was taken to the Supreme Court which transferred the case here.

[2] There is no question about the City's authority to make these purchases under Section 9-2-98 of the Municipal Code, and its predecessor statutes. Ill Rev Stats c 24, § 9-2-98.

for judgment and order of sale under the provisions of Section 225 of this Act, as amended, the purchaser or his assignee may file a petition in the county court in the same proceeding wherein the judgment of sale was entered upon which the sale was had, praying that the court direct the county clerk to issue a tax deed if the real estate shall not be redeemed from the sale. Such petition shall be accompanied by a filing fee of $15.00. Notice of the fact of filing the petition and the date on which the petitioner intends to make application for an order on the petition that a deed issue if the real estate shall not be redeemed from the sale shall be given to occupants, owners and persons interested in the real estate in the same manner as provided in Section 263, except that only one publication shall be required. . . . The county clerk shall be notified of the filing of the petition and any person owning or interested in the real estate may, if he desires, appear in the proceeding. *If the time of redemption expires and the real estate has not been redeemed from the sale and all taxes and special assessments which became due and payable subsequent to the sale have been paid and all forfeitures and sales which occur subsequent to the sale have been redeemed and the notices required by law have been given and the petitioner has complied with all the provisions of law entitling him to a deed, the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of said order, to issue to the purchaser or his assignee a tax deed.* . . . The county court is hereby given jurisdiction to, and upon application therefor shall, issue a writ of assistance to put the grantee in possession of said real estate and is also given jurisdiction to, and shall

184

have the power to, enter such orders and issue such writs as may be necessary or desirable to maintain the grantee in possession of said real estate. Tax deeds issued pursuant to this section shall be incontestable except by appeal from the order of the county court directing the county clerk to issue the tax deed. This section shall be liberally construed so that tax deeds herein provided for shall convey merchantable title. (Emphasis supplied.)

§ 751 (Section 270):
. . . *No final judgment or decree of court in any case either at law or in equity or in proceedings under the Eminent Domain Act involving the title to or interest in any land in which such party holding such tax deed shall have an interest or setting aside any tax deed procured under this Act shall be entered until the claimant shall make reimbursement to the party holding such tax deed and payments as herein provided in so far as it shall appear that the holder of such deed or his assignors shall have properly paid or be entitled to in procuring such deed.* (Emphasis supplied.)

Considering first the provisions of Section 266, we are urged by petitioner to interpret this language as fully supporting the trial court's order. Prior to the 1951 amendment of this section of the Act, a tax deed purported to convey title to the premises involved, but consistent case law through the years had declared that such a tax deed constituted merely a lien or "color of title." To acquire good title the lienholder was required to take possession of the property, pay taxes for seven consecutive years, and file a bill to quiet title based on Section 6 of the Limitations Act. Ill Rev Stats c 83, § 6.

185

There can be no doubt but that the 1951 amendment was intended to change this situation as to the character of a tax deed. To say this much, however, is not to reach any conclusion as to the requirements established for the issuance of such a deed conveying merchantable title. The section itself sets forth conditions which must be met before the court may properly direct the issuance of a tax deed. These are:

(1) The period of redemption must have expired without redemption.

(2) All taxes and special assessments becoming due and payable subsequent to the sale must have been paid.

(3) All forfeitures and sales occurring subsequent to the sale must have been redeemed.

(4) The notices required by law must have been given.

(5) The petitioner must have complied with all the provisions of law entitling him to a deed.

In the case at bar the petitioner contends that she has fully complied with all these conditions. The City does not contest the first four points, as listed above, but argues that the fifth condition has not been met; that this condition is broader than the provisions of Section 266 standing alone, and must be considered as encompassing the requirements of any other provision of law which might be pertinent, including Section 270. More specifically, the City contends that the order in this case is a final judgment or decree which has the effect of setting aside its tax deeds, and it could, therefore, not properly be entered under the restrictions of Section 270 without reimbursement to the City. The general rules of statutory construction are not difficult of ascertainment, but genuine problems often present themselves in application of the rules to particular situations. We are required by Section

266 itself to construe it liberally "so that tax deeds herein provided for shall convey merchantable title." Yet we must not confine our interpretation to one section of a statute, but, rather, the legislative intent must be gathered from the entire act. Illinois Bell Tel. Co. v. Ames, 364 Ill 362, 366, 4 NE2d 494; School Directors of School Dist. No. 82, Whiteside County v. County Board of School Trustees, 15 Ill App2d 115, 122, 145 NE2d 285. Since Sections 266 and 270 were amended by separate bills in the 1951 session of the legislature, there could probably be an analogy drawn to the rule that two acts passed at the same session must be considered in pari materia. Town of Cicero v. Weilander, 35 Ill App2d 456, 466, 183 NE2d 40. Even separate statutes relating to the same subject or object are in pari materia and must be construed together. Southmoor Bank & Trust Co. v. Willis, 15 Ill2d 388, 394, 155 NE2d 308. Further, in seeking to determine the intent of the legislature, we should not only consider the language used but also "the evil to be remedied and the object to be attained." Jones v. Pebler, 371 Ill 309, 311, 20 NE2d 592. At the same time, however, we must bear in mind that basic to the whole approach is the rule that where "the language used in a statute is plain and unambiguous, there is no room for construction." Mason v. Cutkomp, 15 Ill App2d 378, 381, 146 NE2d 382.

It is quite obvious that both sections of the statute were enacted with a view to encouraging tax buyers, thus increasing the collection of money by the various taxing authorities and returning delinquent properties to the tax rolls on a current basis. Cherin v. The R. & C. Co., 11 Ill2d 447, 143 NE2d 235. But the recognition of this intention furnishes scant, if any, assistance here because both parties are tax buyers.

Equitable principles which might be considered in making a liberal construction of Section 266 are also of

little value to us in this case. It is argued tellingly that the City could have perfected a title to the premises, as mentioned above, and thus become the owner thereof; that it did not do so; that the owner's interest is eliminated by the tax deed procedure under Section 266; that the City, under the circumstances, should not be in a stronger position than it would be if it had become the owner. On the other hand, if neither the City nor anyone else had bought the premises for nonpayment of the old special assessments they would have remained a lien on the land and would have had to be paid by petitioner's assignor when he purchased the premises for nonpayment of the 1959 general taxes. Ill Rev Stats, c 120, § 753. From this springs the classical argument of the tax buyer that his certificate or deed should stand in a preferred position equivalent in priority to that of the taxes whose lien was extinguished by his purchase. Chicago Land Clearance Commission v. Narodski, 57 Ill App2d 302, 207 NE2d 81, and cases therein cited.

■ Turning to the language of Section 266, it is there made perfectly plain that the petitioner must comply "with all the provisions of law entitling him to a deed." If by this it had been intended to limit requirements to those set forth within that section of the Act, it would have been very simple to say so. That such was not the intention is indicated, for example, by that section's failure to refer specifically to the obligation of a tax buyer to pay prior taxes. Ill Rev Stats, c 120, § 753. We conclude, therefore, that the City is correct in its contention that to determine petitioner's compliance with Section 266 we must determine petitioner's compliance with all other provisions of law, including all sections of the Revenue Act.

Considering, then, the wording of Section 270 to see if it applies in the instant case, we find that it does.

It is hard to conceive of broader or stronger terminology than that used in the preliminary phrase: "No final judgment or decree of court in any case either at law or in equity or in proceedings under the Eminent Domain Act involving the title to or interest in any land. . . ." This statute was on the books when Section 266 was amended to provide for a court-directed issuance of merchantable title tax deeds. As mentioned above, the same 1951 session of the legislature amended both Section 266 and Section 270, but it did not see fit to alter the part of Section 270 which we have just quoted and which is of critical importance in the case at bar.

■ We take notice of the fact that many actions of the General Assembly are not self-initiated; that parties interested in a particular problem will submit their suggestions to the legislature and urge their adoption; that this is especially true in an area of expertise so narrow and so complex as that involving tax deeds. Now, it may have been the intention of the proposers of the 1951 amendment to Section 266 that the procedure there established should not be affected by the terms of Section 270. But neither section so states. The intention of those who present legislative proposals, the intention of the legislature in adopting an amendment to an individual section of a statute, and the intention of the legislature as expressed in the entire act, may be three different things. By hindsight it appears that the proposers of the Section 266 amendment might well have suggested also that orders entered thereunder be excepted from the prohibition of Section 270. Whether or not such a provision would have been adopted is now, however, only a matter of speculation.

■ Able counsel for both parties have been unable to cite any authorities bearing directly on the issue before us, and, in consequence, we are aware of the im-

portance attached to the decision in a case of first impression. It is our conclusion that Section 270 of the Revenue Act is applicable to the instant case, and under its terms the County Court's order should not have been entered until the petitioner [3] had made reimbursement to the City of Chicago for its tax deeds.

The parties have argued minimally in this court regarding the result which would follow if the City's deeds were not purchased after a reversal of the trial court's order.[4] We make no decision on this point because the case has not reached that stage, and, for one reason or another, the issue may never arise.

The order of the County Court is reversed and the cause remanded to the Circuit Court of Cook County for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

McCORMICK, P. J. and DRUCKER, J., concur.

## On Rehearing

After allowing a petition for rehearing we have also permitted briefs to be filed by the Cook County Collector and by individual amici curiae.

---

[3] We have no difficulty in finding that the petitioner in this case, being one who seeks relief against the holder of tax deeds, is a "claimant" within the meaning of the clause in Section 270 which reads "until the claimant shall make reimbursement."

[4] Another part of Section 266 reads:

If the county court shall refuse to enter an order directing the county clerk to execute and deliver the tax deed, because of the failure of the purchaser to fulfill any of the above provisions, it shall order the return of the purchase price forthwith as in case of sales in error in all cases where the purchaser or his assignee has made a bona fide attempt to comply with the statutory requirements for the issuance of the tax deed.

The brief of amici curiae fully supports the position taken by petitioner as set forth in the latter's original brief and in her petition for rehearing. The extraordinary thing about all these briefs is that they come very close to ignoring completely the statutory provision (the part of Section 270 quoted above) which constituted the primary basis for our opinion in this case. Ill Rev Stats (1963), c 120, § 751.

We deem it to be a fair summary of the brief of amici curiae, and of the major part of the petition for rehearing, to say that this court is alleged to have reached a conclusion which is incorrect because of the law expressed in two Supreme Court decisions—Clark v. Zaleski, 253 Ill 63, 97 NE 272 (1912), and Cherin v. The R. & C. Co., 11 Ill2d 447, 143 NE2d 235 (1957).

First, as to the Clark case, we agree completely that it declared the proposition that the reimbursement right of a prior tax deed holder had been cut off by a subsequent tax foreclosure proceeding. Though of the highest authority, that decision was necessarily an interpretation of the statute as it existed in 1912, and the opinion's viability as a precedent to control a later court must depend on there having been no change in the statute which would dictate a different result. The fact is that there has been such a statutory amendment, and it does, in our belief, require the decision which we have rendered in our original opinion.

In 1912 the part of Section 270 quoted above had not been enacted. The Section (then 224) did, however, contain a proviso clause which has been carried forward into the present Section 270. It reads:

> *Provided,* That any judgment or decree of court setting aside any tax deed procured under this act, shall provide that the claimant shall pay to the party, holding such tax deed, all taxes and legal costs, together with all penalties, as provided by law, . . . .

191

Both petitioner and amici refer casually to this proviso as being the same as the reimbursement provision of Section 270 which we set forth in our opinion, though they do concede that in the latter it has been "somewhat expanded," or "broadened to cover additional circumstances where reimbursement is required." Indeed it has, and neither brief makes any attempt to show what the meaning of the broader language should be if it were not to be interpreted in the way we have construed it. The only argument which we can extract from the briefs by inference is that the more encompassing terms of the present statute should be ignored.

■■ ■■ At the time of the Clark decision, the only circumstance requiring reimbursement of a prior tax deed holder was the entry of a decree "setting aside" such a tax deed. This contemplated a decree which would accomplish just what the statute stated—the setting aside of a tax deed as a cloud on title. The tax foreclosure proceeding with which the Clark court was concerned did not involve the setting aside of a tax deed, but, rather, the foreclosure of the interests of the tax deed holder and others. There is a very real difference. When a tax deed is set aside, the interest of its holder is extinguished ipso facto, but when it is foreclosed, he may share in the proceeds of sale if the price is high enough to extend that far after payment of interests having priority.

■■ So we would agree with the Clark court, as, of course, we are bound to do, that a tax foreclosure does not "set aside" a prior tax deed, and the holder of such a deed would not be entitled to reimbursement under the proviso clause of Section 270. While part of the City's argument in the instant case is that the order appealed from was one which had the effect of "setting aside" its tax deeds, we do not so hold.

As we have mentioned, however, the statute was amended in 1919 by the addition of the sentence, part of which we shall repeat for purpose of reexamination:

> *No final judgment or decree of court in any case* either at law or in equity or in proceedings under the Eminent Domain Act *involving the title to or interest in any land in which such party holding such tax deed shall have an interest or setting aside any tax deed procured under this Act* shall be entered until the claimant shall make reimbursement to the party holding such tax deed . . . . (Emphasis supplied.) Ill Rev Stats (1963), c 120, § 751 (Section 270).

The question presented to us is therefore quite different from that which faced the court in the Clark case. We are not limited to considering whether the order was one "setting aside" a tax deed. We need only decide whether the order appealed from is one "involving the title to or interest in any land in which such party holding such tax deed shall have an interest." We conclude that it is. And we are not concerned with the alternative coverage of the statute which applies to "setting aside any tax deed." It being only this alternative coverage clause which is similar to the proviso clause effective at the time of the Clark decision, we find nothing in the Clark opinion to guide us in interpreting the very different language now confronting us, nor do we find in that opinion anything to deter us from reaching the conclusion we have indicated.

The other decision upon which great reliance is placed by petitioner and amici curiae is that of Cherin v. The R. & C. Company, supra. This opinion was filed in 1957, so the statutory background was essentially the same as in the instant case. Cherin also involved a proceeding under Section 266 as amended in 1951. In our view,

though, the Cherin case affords no help to petitioner in the case now before us.

Cherin was the owner of real estate which was the subject of tax deeds issued to The R. & C. Company pursuant to order of court after an annual tax sale. Some eight months after entry of the order, Cherin petitioned to have it and the tax deeds set aside on the ground that proper statutory notice had not been given. On appeal from denial of the petition the Supreme Court affirmed. It held that the petition to vacate, coming when it did, amounted to a collateral attack on the order directing issuance of the deeds, and, in the light of the finding of due notice embodied in the order, such an attack would not lie. The Supreme Court noted that the county court order contained the finding, "that all notices required by law have been given and *Petitioner, . . . has complied with all the provisions of law entitling it to tax deeds* to said parcels of real estate." (Page 449.) (Emphasis supplied.)

In holding that such a finding was conclusive against collateral attack, the court found a parallel in the tax foreclosure proceedings similarly approved in Clark v. Zaleski, which was also a case of collateral attack. The court commented that by the 1951 amendments to Section 266 the legislature had "assimilated the procedure with respect to the issuance of deeds following annual tax sales to that used in tax foreclosure proceedings by requiring that the right to the issuance of a deed be determined by the county court instead of by the ministerial act of the county clerk and determined that: 'Tax deeds issued pursuant to this section shall be incontestable *except by appeal from the order of the county court directing the county clerk to issue the tax deed.'*" (Page 453.) (Emphasis supplied.)

It seems obvious to us that the Cherin decision imposes no bar to the conclusion we have reached. The court recognized that the statutory post-sale conditions

194

must be met by the purchaser, and made specific reference to the county court's finding that the petitioner in Cherin had "complied with all the provisions of law entitling it to tax deeds." In precluding collateral attack against such an order, the court also expressly recognized the right of a party to obtain review of such a finding by taking an appeal from that order.

In the instant case we do not have a collateral attack, and we do have an appeal of the kind referred to. We believe that the Cherin decision contemplates that it is our duty then to determine whether or not petitioner complied with all the statutory conditions so as to entitle her to a deed.

Petitioner makes a further point that the order appealed from, directing issuance of a tax deed to petitioner, is not a "final judgment or decree" and is therefore not encompassed within the language of Section 270. It is only a supplemental or auxiliary order, she says, implementing the previously entered order of sale. Certainly it is supplementary to the order of sale by its very nature, but it is also a "final judgment or decree" in that it is a final, appealable, judicial determination that the statutory conditions precedent to the issuance of a tax deed have been performed or met by the petitioner. Young v. Madden, 20 Ill2d 506, 509–511, 170 NE2d 551.

Petitioner then argues that the land had been sold to her assignor clear of all claims, and that the sale itself had extinguished all right and interest of the City (and the owner, any mortgagee, lienor, etc.) except for the right to redeem from the sale; that it was only because of the City's redemption right that petitioner had acknowledged that the City had an interest requiring notice on petitioner's application for the order directing issuance of a tax deed. Conceding, arguendo, that Section 270 would apply to an order "involving the title to or interest in any land in which such party (the City)

holding such tax deed shall have an interest," petitioner contends that the City had no such interest remaining at the time the order was entered directing issuance of a deed, because by that time the City's right of redemption had expired. This argument may be said to be consistent with petitioner's having alleged in her petition for issuance of a deed that the City did have an interest, since the right to redeem had not run its course when the petition was filed.

If it were true that the order in question had been entered at a time when the City had no interest, we would agree with petitioner that Section 270 would have imposed no barrier to its entry. The question thus raised is whether, after the sale, the City continued to have any interest other than its right to redeem. We think it did.

Let us assume a few hypothetical developments after the sale to petitioner, and examine their consequences. Suppose there had been some unpaid general taxes charged on the land which had not been included in the advertisement, and suppose further that petitioner had failed to pay them within the time allowed by Section 247 of the statute. Ill Rev Stats (1963), c 120, § 728. That Section states that in such event the sale would have become void and the purchaser would not have been entitled to a certificate of purchase. But what about the title? If, as petitioner urges in this court, the sale had transferred title to the purchaser then and there, the statute would then have to make some provision for the retransfer of title back to the owner, and for reinstatement of any liens, etc., which had existed prior to sale. It does not do this. On the contrary, the statutory scheme did not contemplate the jumping of title forth and back, but, in our opinion, left it right where it was before the sale, pending the purchaser's compliance with the condition imposed by Section 257. During the

statutory period after the sale, within which our hypothetical petitioner might have paid the other taxes due, the City's interest in the land remained unextinguished by the sale, but subject to being foreclosed by the rights acquired by the purchaser at the sale. If the purchaser had not qualified for a certificate of purchase the various title interests would have continued unaffected by the ineffective purchase except for the reimbursement lien given to the purchaser by Section 247 in such a circumstance.

This general scheme persists through other Sections of the statute which are applicable after the issuance of a certificate of purchase. For examples, under the provisions of Section 263 notice of purchase must be given by the purchaser to the owner, occupants and others; Section 266 requires notice also in connection with the purchaser's petition for the issuance of a deed; and the same Section requires the purchaser to make payment of subsequent taxes and redeem subsequent forfeitures and sales. Ill Rev Stats (1963), c 120, §§ 744 and 747. If the court were to find that the purchaser had made a bona fide attempt to comply with these requirements and failed, then, pursuant to Section 266, the court would order return of the purchase price "as in case of sales in error." Section 260 covers sales made in error and provides simply that upon making such refund to the purchaser the County Collector shall cancel the certificate of purchase and the County Clerk shall make an appropriate entry on his records.

And what of the title in such event? The statute is silent. Again, if petitioner's point were valid, she would have held title from the time of sale, and some sort of retransfer would be necessary to get it back to the former owner, and something would also be required to reinstate former liens, etc. The statute does not seem to contemplate any such thing. In our opinion the interests

of the owner and lienors had remained alive this whole time, and were ready and waiting to emerge with all their prior validity upon failure of the purchaser to fulfill the post-sale statutory requirements. And this is so, even though with the successful completion of each step by the purchaser the foreclosure of these interests might become more and more probable.

Section 268 (c 120, § 749) provides that the County Clerk's tax deed shall be recorded and shall vest title in the grantee—a result which, of course, could not occur if, as petitioner argues, he had already acquired title at the sale. Section 271 (c 120, § 752), however, adds still another condition. It states (among other things) that unless the holder of a certificate of purchase takes out such a tax deed and records it within one year from expiration of the redemption period, "the said certificate or deed, and the sale upon which it is based, shall, from and after the expiration of such one year, be absolutely null." (A 1965 amendment to this Section added the words, "and void with no right to reimbursement.")

On this hypothesis the question would once more arise as to what was the state of the title on failure to record a tax deed in apt time, and with the same answer, so far as we can see. It would only be after compliance with all the statutory conditions subsequent to sale that a purchaser could become the grantee of a tax deed, and only with the timely recording of the deed would the presale interests of the owner, lienors, etc., become fully foreclosed.

In conclusion as to this point, therefore, we hold that the City in the instant case continued to have an interest in the land at the time of entry of the order directing issuance of a tax deed to petitioner. That being true, the unambiguous language of Section 270 required that the order appealed from not be entered until after reimbursement to the City.

We are aware—as we were at the original hearing in this case—that the result we reach may not be conducive to the encouragement of buyers at annual tax sales. That, however, is a problem for the legislature. If Section 270 were not to apply to this situation, it would have been, and can yet be, a simple matter so to provide. As mentioned in our original opinion, we cannot assume that the legislature was unmindful of the existence of Section 270 at the time it enacted the pertinent provisions of Section 266 because both Sections were amended at the same session in 1951.

■■ We refer again to the opinion in Clark v. Zaleski, 253 Ill 63, 76, 97 NE 272, where the court quoted with approval from its earlier opinion in People v. Biggins, 96 Ill 481, 486:

> If our Revenue law is defective, it is the duty and business of the legislature to amend it. Courts are powerless to interfere. They cannot make, but can only construe, laws after they are made by the legislature.

The long legislative history in this field evidences many instances of statutory amendment to protect the position of the tax buyer. Section 270 embodies more than one such example. Perhaps it went too far in reaching the ultimate of protecting one tax buyer against another. We make no policy judgment in this regard.

In its brief on rehearing, the City argues, in the alternative, that even if a private tax deed holder would not have to be reimbursed under the circumstances of this case, the City is in a different and stronger position. The Cook County Collector, as amicus curiae, supports this contention. Because of the conclusion we have reached, however, we do not consider it necessary to discuss this point.

199

The order of the County Court is reversed and the cause remanded to the Circuit Court of Cook County for further proceedings not inconsistent with the views expressed in this opinion as supplemented.

Reversed and remanded.

DRUCKER, P. J. and McCORMICK, J., concur.